AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA Sarah Wolfe)                    USAO CW No. 23-046

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ALEKSEY OLEGOVICH VOLKOV | ) | Case No.  23-mj-1373 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   July 2021 through November 2022   in the county of   Philadelphia   in the
Eastern   District of   Pennsylvania  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371 and 1956(h) | conspiracy to commit computer fraud (July 2021 through November 2022) and conspiracy to commit money laundering (December 2021 through April 2022) |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

/s/ Jeffrey Hunter

*Complainant's signature*

Jeffrey Hunter, FBI Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date:   07/28/2023

/s/ Honorable Craig M. Straw

*Judge's signature*

City and state:   Philadelphia, Pennsylvania

Honorable Craig M. Straw, U.S. Magistrate Judge

*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### <u>AFFIDAVIT</u>

I, Jeffrey Hunter, being first duly sworn, hereby depose and state as follows:

**A.    Introduction and Agent Background**

1.      I make this affidavit in support of a Criminal Complaint and Arrest Warrant against ALEKSEY OLEGOVICH VOLKOV.   As set forth below, there is probable cause to believe that from approximately July 2021 through November 2022, ALEKSEY OLEGOVICH VOLKOV conspired with others to:

   a.  intentionally access a protected computer used in interstate and foreign commerce without authorization, and thereby obtain information from a protected computer, and to commit the offense for the purposes of private financial gain, in violation of  Title 18 United States Code, Sections 1030(a)(2)(C) and (c)(2)(B)(i);

   b.  knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally cause damage without authorization to a protected computer, and cause loss to one or more persons during any 1-year period aggregating at least $5,000.00 in value and cause damage affecting 10 or more protected computers during any 1-year period, in violation of Title 18, United States Code, Sections 1030(a)(5)(A) and 1030(c)(4)(B); and

   c.  knowingly and with intent to extort from any person any money or other thing of value, transmit in interstate and foreign commerce any communication containing any demand and request for money and other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate

1

the extortion, in violation of Title 18 United States Code, Sections 1030(a)(7)(C)

and 1030(c)(3)(A)

all in violation of Title 18, United States Code, Section 371.

2.      There is also probable cause to believe that from approximately December 2021

through April 2022, ALEKSEY OLEGOVICH VOLKOV conspired with others to commit

money laundering, in violation of Title 18 United States Code, Section 1956(h).

3.      I am currently a Special Agent with the United States Department of Justice,

Federal Bureau of Investigation (FBI) and have been since November of 2006.  Prior to

becoming a Special Agent, I was employed as a Detective with the Chicago Police Department,

where I worked as an Officer and Detective since January of 2000.  Over the course of my career

I have investigated homicides, robberies, kidnappings, burglaries, firearms violations, sexual

assaults, narcotics violations, frauds, and numerous other crimes.  I am currently assigned to the

FBI Philadelphia Division's Cyber Crime Squad, whose primary mission is to investigate crimes

involving computers and the internet.  Based upon my training and experience, I am familiar

with the means by which individuals use computer and information networks such as the Internet

to commit various criminal offenses, and I have participated in the execution of searches and

seizures pursuant to warrants authorizing the seizure of evidence related to computer crimes.  I

have also executed numerous arrest warrants based on federal criminal violations.

4.      This affidavit is based on my personal knowledge and information obtained from

documents, witnesses, and other law enforcement officials. The information contained in this

affidavit is submitted for the limited purpose of establishing probable cause in support of a

criminal complaint and arrest warrant against ALEKSEY OLEGOVICH VOLKOV.  As such,

this affidavit does not include all of the information that I have acquired while participating in

this investigation. Unless specifically indicated, all conversations and statements described in this Affidavit are related in substance and in part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date asserted. Similarly, where I assert a certain dollar or Bitcoin amount, I am asserting approximately that amount.

**B.** **Statement of Probable Cause**

5. From July 2021 to November 2022, ALEKSEY OLEGOVICH VOLKOV ("VOLKOV") and others (collectively, the "Conspirators") were engaged in a computer hacking and extortion scheme that targeted businesses in the United States using malicious software known as "Yanluowang Ransomware." This variant is typically identifiable because a victim company's files are encrypted with the extension ".yanluowang."

6. To effectuate the scheme, the Conspirators first obtained unlawful access into victims' computer networks and stole their data. Then, the Conspirators deployed the ransomware on the victims' computers and encrypted the data to prevent victims from accessing it, thereby hindering their business operations. Third, the Conspirators demanded a ransom be paid by the victims in exchange for restoring access to the data and promising not to publicly disclose the hack or release victims' stolen data on a leak website. Lastly, the Conspirators divided the ransom payments amongst themselves.

7. VOLKOV served as an "initial access broker" for the group, meaning he procured access to victim networks and provided it to the group in exchange for a percentage of the ransom proceeds.

<u>**VICTIM 1**</u>

8. On July 19, 2021, employees of a company headquartered in Philadelphia, Pennsylvania (VICTIM 1) discovered their website was suffering a Distributed Denial of Service

("DDoS") attack.[1]  Upon further review, VICTIM 1 learned that unauthorized Subjects had accessed an internal computer and encrypted files on one of their servers.  The Subjects left a ransom note in a text file directing VICTIM 1 to make contact with the Subjects via two email addresses associated with Yanluowang Ransomware: xiaomin.pooh@mailfence[.]com and guandong@mailfence[.]com.  Executives of VICTIM 1 also received harassing phone calls from the Subjects.  VICTIM 1 representatives made contact with the Subjects but were ultimately able to recover the files from backup copies and, thus, VICTIM 1 did not pay a ransom.

### **VICTIM 2**

9.     On September 18, 2021, an engineering firm (VICTIM 2) with 19 offices in the United States, including one in Philadelphia, Pennsylvania, discovered that they had been infected with ransomware and that files on their system had been encrypted with the extension .yanluowang. VICTIM 2's entire network, which included 25 servers was encrypted, impacting all of VICTIM 2's offices, including the office in Philadelphia. The Subjects left a ransom note in a text file directing VICTIM 2 to make contact with the Subjects via two email addresses: cang.leen@mailfence[.]com and yan.laowang@mailfence[.]com. VICTIM 2 also experienced periodic DDoS attacks during the incident.

10.    VICTIM 2 representatives engaged in negotiations with the Subjects, who initially demanded a ransom of $3 million dollars (to be paid in Bitcoin).[2] The Subjects claimed to have stolen company data and, as proof, provided two links to a file sharing platform

---

[1] A DDoS attack occurs when a threat actor floods a server with internet traffic to prevent users from accessing connected online services and sites.

[2] Bitcoin (BTC) is a form of virtual currency.  Thousands of computers connected via the Internet run Bitcoin software and participate in the Bitcoin network.  This software provides all necessary services to transact in Bitcoin, including (i) allowing users to create "Bitcoin addresses," roughly analogous to accounts; (ii) injecting new Bitcoin into circulation; and (iii) securely transferring Bitcoin from one Bitcoin address to another.

(Platform A), where the victim could see sample exfiltrated files. Subpoenaed Platform A records related to these links revealed that the exfiltrated files had been uploaded on October 1, 2021 from a particular IP address (IP 1).

11.     On October 1, 2021, VICTIM 2 paid the Subjects a ransom of $500,000 (paid in Bitcoin).  In exchange, VICTIM 2 received a decryptor for their locked data.  Through internal investigation, VICTIM 2 determined that the exfiltrated files had initially been sent to a cloud storage company, Platform B.  VICTIM 2 obtained information regarding this account from Platform B and provided copies to the FBI.  Forensic examination of these files revealed that the Platform B account had been registered using email address xiaomin.pooh@mailfence[.]com (previously known to the FBI from VICTIM 1's ransom note) and IP 1.  The Platform B records also contained an activity log with timestamps, methods of connection, and IP addresses, including IP 1.

## **VICTIM 3**

12.     On November 27, 2021, a company based in California (VICTIM 3) reported to the FBI that they were the victim of Yanluowang Ransomware.  VICTIM 3 advised that the encrypted files were tagged with the file extension, .yanluowang and they received a ransom note in a text file directing them to contact the Subjects at the following email addresses: son.goku@mailfence[.]com and leen.cang@mailfence[.]com (similar to the email address provided to VICTIM 2: "cang.leen@mailfence[.]com").  The ransom note also directed VICTIM 3 to a TOR[3] site (Leak Site) where the Subjects would post the victim's data if the ransom was

---

[3] "TOR" is the acronym for "The Onion Router," which is a special network of computers on the internet that is designed to conceal the true IP addresses of the computers on the network and, thereby, the identities of the network's users. TOR browser software is publicly available and may be downloaded by prospective users on the internet. Although TOR has known legitimate uses, it is also known to be used by cybercriminals seeking anonymity in their illicit online activities.

not paid.  VICTIM 3 also reported receiving DDoS attacks and telephone threats from the Subjects during the incident. VICTIM 3 later reported to the FBI that it was able to fully restore the encrypted data from backup copies and, thus, did not pay a ransom.

### VICTIM 4

13.      On December 13, 2021, a bank based in Michigan (VICTIM 4) discovered that its computer network had been infected with ransomware and that some of the files on its system had been encrypted with the extension .yanluowang.  The Subjects left a ransom note in a text file directing VICTIM 4 to make contact with the Subjects via email address chonh.honk@mailfence[.]com.

14.      VICTIM 4 representatives engaged in negotiations with the Subjects, who initially demanded a ransom of $15 million dollars (to be paid in Bitcoin). The Subjects claimed to have stolen company data and, as proof, provided two links to Platform A, where the victim could see sample exfiltrated files. Subpoenaed Platform A records related to these links revealed that the exfiltrated files had been uploaded on December 13, 2021 from IP 1.

15.      On December 31, 2021, VICTIM 4 paid the Subjects a ransom of $1,000,000 (paid in Bitcoin).  In exchange, VICTIM 4 received a decryptor for the locked data.

### VICTIM 5

16.      On February 1, 2022, a company based in Illinois (VICTIM 5) reported to the FBI that it had suffered a Yanluowang Ransomware attack.  VICTIM 5 advised that it had engaged with the Subjects and the initial ransom demand was $6 million.  On July 1, 2022, I observed that VICTIM 5's purportedly exfiltrated data was posted on the Leak Site as of January 11, 2022.

## **VICTIM 6**

17.     On March 4, 2022, a company based in Georgia (VICTIM 6) reported to the FBI that it had suffered a Yanluowang Ransomware attack.  VICTIM 6 advised that during the incident, it had received a call from the Subjects asking for the vice president and other employees by name.  The call appeared to come from a spoofed number that was made to look like the phone number of the personal assistant to the president of the company.  The caller left a message, claiming to be a representative of the group that had attacked the network and directing VICTIM 6 to contact the Subjects at email address inchenai@mailfence[.]com.

18.     VICTIM 6 subsequently provided to the FBI a screenshot of a pop-up message they received with instructions to contact the Subjects at inchenai@mailfence[.]com and chensinpu@mailfence[.]com.  The email also directed VICTIM 6 to the same Leak Site as VICTIMS 3 and 5.

19.     On March 8, 2022, VICTIM 6 received an email in which the Subjects claimed to have stolen company data and, as proof, provided two links to Platform A, where the victim could see sample exfiltrated files. Subpoenaed Platform A records related to these links revealed that the exfiltrated files had been uploaded on March 8, 2022 from an IP address that resolved to a TOR relay node.  VICTIM 6 advised that it did not engage in negotiations with the Subjects and did not pay a ransom.

## **VICTIM 7**

20.     On April 19, 2022, a security team of a telecommunications company in Ohio (VICTIM 7) reported to the FBI that VICTIM 7 had experienced a series of cyber incidents, including a "credential stuffing" attack[4] and a network intrusion.

21.     On July 1, 2022, I observed that VICTIM 7's purportedly exfiltrated data was posted on the same Leak Site used in the attacks against VICTIMS 3, 5 and 6 as of June 30, 2022.

22.     During an internal investigation, VICTIM 7 identified and provided to the FBI numerous indicators of compromise, including two IP addresses ending in 217 and 239 that the Subjects had used in attempting to gain access to multiple corporate accounts.  FBI determined that these IP addresses corresponded to an anonymous virtual private server ("VPS")[5] service (Platform C).  Subpoenaed records from Platform C revealed that these IP addresses were associated with an account that had been registered with email address "[CC-1

---

[4]  Credential stuffing is a type of cyberattack in which the attacker collects stolen account credentials (e.g., lists of usernames and/or email addresses and the corresponding passwords, often from a data breach), and then uses the credentials to gain unauthorized access to user accounts on other systems through large-scale automated login requests directed against a web application.  https://en.wikipedia.org/wiki/Credential_stuffing

[5] A VPS is a virtual machine sold as a service by an Internet hosting service provider. A virtual machine is a portion of a physical computer server that is configured to act like a computer server in and of itself, and thus, through such software configuration, acts like a separate computer. Thus, a single computer server may function as several VPSs. By using VPSs, the Website's administrator can conceal his identity and the Website's location. The VPS involved here is also enabled to connect to other sites on the Internet from this VPS. This capability can be used, for example, to send data or instructions to another website or to send communications, including email, from the VPS to another computer over the Internet. Although VPSs have many legitimate uses, they are also known to be used by cybercriminals seeking anonymity in their illicit online activities and to prevent them from being disrupted.

moniker]@protonmail[.]com"[6] from IP 1.  Additionally, the Platform C account activity logs showed access from another IP address (IP 2).

## THE CONSPIRATORS' COMMUNICATIONS

23.     The FBI investigation has revealed that the Conspirators used numerous computer servers, monikers, email accounts and other types of online communication platforms to conduct these attacks.  Review of these items revealed that VOLKOV and others worked together to conduct the ransomware attacks described above.

24.     More specifically, pursuant to a federal search warrant issued on December 23, 2022, by the Honorable Virginia K. Demarchi in the Northern District of California (1093-cr-22-71639), FBI obtained a forensic image of the server associated with IP 2.  Review of the server showed numerous forensic artifacts associated with the attacks on VICTIMS 1-7, including lists of victim network users with administrative rights, victim network subnet configurations, victim network logins and passwords and substantive victim files that were exfiltrated.  I also found login activity associated with the various email addresses that the Conspirators used to negotiate with the victims, as identified above.

25.     Additionally, the forensic image of the server revealed numerous electronic chats between one coconspirator (CC-1) and 41 other counterparties, including "chubaka.kor." In these chats (which were translated from Russian into English by an FBI linguist), chubaka.kor, who also identified himself with a second moniker, "nets," explicitly offered CC-1 access to victim networks for a price.  After some discussion, CC-1 and chubaka.kor agreed that chubaka.kor would get a percentage of the ransom payment.  Over the course of one year, CC-1 and

---

[6] ProtonMail is an end-to-end encrypted email service based in Switzerland.  Although ProtonMail is known to be used by individuals who are seeking privacy in their legitimate email communications, it is also known to be used by cybercriminals seeking anonymity in their illicit online activities.

chubaka.kor engaged in frequent communications regarding ransomware attacks. They discussed which victims to target, how much money they could expect to get from the attacks, the progress of the attacks as they were ongoing, the negotiations with the victims, and the division of the ransom proceeds.

26. In particular, on November 20, 2021, chubaka.kor offered CC-1 access to VICTIMS 3 and 4, asking if CC-1 would pay a percentage of the ransom. CC-1 agreed and advised that VICTIM 3 would be targeted first, then VICTIM 4. The next day, CC-1 advised chubaka.kor that he had gained access to VICTIM 3's Domain Administrator.[7] CC-1 also mentioned that he had a team of people who work on the victim networks, including three "pentesters"[8] but confirmed that chubaka.kor wanted CC-1 specifically to handle VICTIM 4. On November 23, 2021, CC-1 advised chubaka.kor that he had gained access to VICTIM 4's Domain Administrator.

27. On November 27, 2021, CC-1 advised chubaka.kor that VICTIM 3 was "locked." As discussed above, VICTIM 3 reported to the FBI that their files had been encrypted on November 26-27, 2021, with the file extension ".yanluowang."

28. On December 13, 2021, CC-1 advised chubaka.kor that VICTIM 4 was done, but due to a programming mistake, CC-1 was not able to encrypt everything. As discussed above, VICTIM 4 reported to the FBI that they suffered a ransomware attack on December 13, 2021. VICTIM 4 also advised the FBI that the Subjects were able to deploy ransomware resulting in

---

[7] A "Domain Administrator" is a user authorized to make changes to global policies that impact all computers and users connected to an Active Directory organization.

[8] A "pentester," short for penetration tester, is someone who performs simulated cyberattacks on a company's computer network to test whether the network can be hacked.

encryption of 30% of their network environment and that the forensic team was able to eject the Subjects from the network before the remaining 70% could be encrypted.

29.     Over the next two weeks, CC-1 and chubaka.kor communicated almost daily, discussing the status of the attack on VICTIM 4, when they expected to be paid, and how much they expected to receive. After much negotiation, on December 30, 2021, VICTIM 4 tentatively agreed to pay the Subjects $1,000,000. CC-1 advised chubaka.kor that payment would be coming soon. Chubaka.kor then asked CC-1 for an advance, explaining that he had no money for holiday gifts. On December 31, 2021, CC-1 agreed and asked chubaka.kor to provide a cryptocurrency wallet. Chubaka.kor provided a BTC address ending in 2hsmd. CC-1 advised that money had been sent and more would follow once the ransom payment was received. A few hours later, CC-1 advised that VICTIM 4 had agreed to pay and that he would send chubaka.kor additional funds. Chubaka.kor provided a new BTC address ending in munev8.

30.     On January 11, 2022, chubaka.kor messaged CC-1 that he had additional targets, including VICTIM 5. On January 17, 2022, CC-1 messaged chubaka.kor that he had gained access to VICTIM 5's Domain Administrator and would aim to encrypt their files after January 23, 2022. As discussed above, on February 1, 2022, VICTIM 5 reported to the FBI that they had suffered a Yanluowang Ransomware attack.

31.     On April 2, 2022, CC-1 and chubaka.kor discussed the intrusion and encryption of VICTIM 6. In the chat, chubaka.kor cited the email address that was provided to VICTIM 6 for negotiation: inchenai@mailfence[.]com. CC-1 advised that VICTIM 6 was quiet, which chubaka.kor described as "sad." Chubaka.kor then asked CC-1 for another advance on their next payout and provided a BTC address ending in d0k7m. CC-1 agreed and advised that he had sent

as much as he could access easily. Chubaka.kor thanked CC-1, explaining that he would use $10,000 for work and $2,000 to live for the next couple weeks.

32. During the course of the next several months, CC-1 and chubaka.kor continued to chat about ransomware attacks. On November 27, 2022, chubaka.kor sent CC-1 network access info for a foreign company with an American subsidiary in Center Valley, Pennsylvania, (VICTIM 8). CC-1 advised that he had gained entry to VICTIM 8's network but would sit and wait for a while.

## CRYPTOCURRENCY PAYMENTS

33. As discussed above, the Conspirators demanded that victims make the ransom payments in Bitcoin (BTC). Based on my knowledge and experience, individuals engaged in ransomware attacks frequently use cryptocurrency not only to expedite payments, but also to conceal their identities and obfuscate the source of those unlawful payments. When a sender initiates a Bitcoin transaction, the sender transmits a transaction announcement across the peer-to-peer Bitcoin network. To complete a transaction, a sender needs only the Bitcoin address of the receiving party and the sender's own private key. This information on its own rarely reflects any identifying information about either the sender or the recipient. As a result, little-to-no personally identifiable information about the sender or recipient is transmitted in a Bitcoin transaction itself. Once the sender's transaction announcement is verified by the network, the transaction is added to the blockchain, a decentralized public ledger that records every Bitcoin transaction. The blockchain logs every Bitcoin address that has ever received bitcoin and maintains records of every transaction for each Bitcoin address.

34. While a Bitcoin address owner's identity is generally anonymous within the blockchain (unless the owner chooses to make information about the owner's Bitcoin address

publicly available), investigators can often use the blockchain to identify the owner of a particular Bitcoin address. Because the blockchain serves as a searchable public ledger of every Bitcoin transaction, investigators can trace transactions to, among other recipients, virtual currency exchanges.

35. The FBI traced the funds from VICTIM 2's $500,000 payment (made in BTC) on October 1, 2021. The tracing revealed that on December 31, 2021, 2.26 BTC (then valued at $94,259) of these proceeds was deposited into a BTC address ending in 2hsmd. As described above, chubaka.kor provided this address to CC-1 in a chat on December 31, 2021 when requesting an advance for his cut of VICTIM 4's ransom payment.

36. The FBI also traced the funds from VICTIM 4's $1,000,000 payment (made in BTC) on December 31, 2021. This tracing revealed that on December 31, 2021, 3.44 BTC (then valued $162,220) of these proceeds was deposited into a BTC address ending in munev8. Again, as described above, chubaka.kor provided this address to CC-1 in a chat on December 31, 2021 as the deposit address for the remaining portion of his cut of VICTIM 4's ransom payment. Additionally, blockchain analysis shows that this ransom payment passed through an intermediate address before it was received by chubaka.kor's address. Based on my training and experience, this type of activity is consistent with individuals who are seeking to conceal the source of unlawful funds.

37. The FBI also conducted blockchain analysis regarding the BTC address ending in d0k7m, which chubaka.kor provided to CC-1 on April 2, 2022. The analysis revealed that on April 2, 2022 this wallet received.2605 BTC (then valued at $12,061) from a wallet address associated with CC-1. As described above, chubaka.kor provided this address to CC-1 in a chat on April 2, 2022 when requesting an advance on his cut of future ransom payments.

## CONFIRMATION OF VOLKOV'S IDENTITY

38.     Additional blockchain analysis by the FBI revealed another address ending in edQ4XW that appeared to receive portions of ransom payments from other victims.  The FBI determined that this address was associated with a cryptocurrency exchange, Exchange A. Records from Exchange A revealed that this address belonged to an account owned by "Alekseq Olegovi3 Volkov" (sic) with email address qwerty4574@mail[.]ru and confirmed with a Russian passport in the name of Aleksey Volkov with a birthdate of March 20, 2000.

39.     FBI open-source research identified a Twitter account associated with email account qwerty4574@mail[.]ru.  Twitter records revealed that the account was associated with telephone number +79111644732.  Apple records identified that phone number as a verified phone number for the account with Apple ID alekseyvolkov4574@icloud[.]com.

40.     The FBI also obtained a federal search warrant for the Apple account belonging to the email address alekseyvolkov4574@icloud[.]com.  During the review of the information provided by Apple, investigators found an image of a chat between chubaka.kor and a user by the name of LockBit.  At the bottom of the image were the following entries:

- Jabber: chubaka.kor@exploit.im[9]

- Login: Kaspersky

- Password: Gs1320ewSzaf.

41.     Based on my training and experience, there is probable cause to believe that this image, found in VOLKOV's iCloud account, captures VOLKOV using the chubaka.kor moniker while in communication with another malicious cyber actor.

---

[9] Jabber is an instant messaging platform based on Extensible Messaging and Presence Protocol (XMPP).  Exploit.in is one of longest-running underground hacking forums and is a predominantly Russian language forum with a marketplace section where cybercriminals trade in stolen credit card details, malware, and even zero-day exploits.

## CONCLUSION

42.     Based on the above, I submit there is probable cause to believe that ALEKSEY OLEGOVICH VOLKOV, conspired with CC-1 to conduct Yanluowang Ransomware attacks and receive payments that were proceeds derived from these attacks, knowing them to be the proceeds of unlawful activity.

<br>

/s/ Jeffrey Hunter
Jeffrey Hunter, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on July 28, 2023

/s/ Honorable Craig M. Straw
_____
THE HONORABLE CRAIG M. STRAW
United States Magistrate Judge
Eastern District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA　　　　　:

　　v.　　　　　　　　　　　　　　　:　　　MAGISTRATE NO. 23-mj-1373

ALEKSEY OLEGOVICH VOLKOV　　　　:

**ORDER**

AND NOW, this 28<u>th</u> day of July, 2023, upon application of the United States

Attorney that the complaint, warrant and affidavit, and corresponding docket entries in the within

criminal proceeding be impounded, said motion is hereby GRANTED and it is

ORDERED

that the complaint, warrant and affidavit, and corresponding docket entries, in the above-

mentioned case are hereby IMPOUNDED and to be retained in the custody of the Clerk of Court

until further order of the Court or until notified by the United States Attorney, or his

representative, that the defendant has been arrested and extradited to the United States, except

that the Clerk of Court is authorized to provide two certified copies of the warrant to the United

States Marshals Service and the Department of Homeland Security.  The Clerk of Court is

directed to make no public docket entry of the sealed documents and motion and order to seal,

and to provide copies of all sealed documents only to Sarah M. Wolfe, Assistant United States

Attorney.

IT IS FURTHER ORDERED THAT the complaint, warrant and affidavit, and

corresponding docket entries, shall be unimpounded immediately upon notification by the United

States Attorney, or his representative, that the defendant has been arrested and extradited to the

United States or upon further order of the Court.

BY THE COURT:


  /s/ Hon. Craig M. Straw
_____
HON. CRAIG M. STRAW
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

            v.                  :        MAGISTRATE NO. 23-mj-1373

ALEKSEY OLEGOVICH VOLKOV        :

## MOTION TO IMPOUND COMPLAINT AND WARRANT

The United States of America, by and through its attorneys, Jacqueline C. Romero,  United States Attorney in and for the Eastern District of Pennsylvania, and Sarah M. Wolfe, Assistant United States Attorney for that District, moves that the complaint, warrant and affidavit, and corresponding docket entries in the within criminal proceeding be impounded, and, in support thereof, alleges that if the existence and content of these documents are made public prior to the arrest of the defendant there is the risk that the safety of victim/witnesses may be jeopardized, that the ongoing investigation may be compromised, and that the defendant will flee, thereby hindering the execution of the arrest warrant.

WHEREFORE, the government respectfully requests that this Court enter an order directing that the complaint, warrant and affidavit, and corresponding docket entries, in the above-mentioned case be IMPOUNDED and be retained in the custody of the Clerk of Court until further order of the Court or until notified by the United States Attorney, or his representative, that the defendant has arrested and extradited to the United States, except for the two certified copies of the warrant to be provided to the United States Marshal's Service and the Federal Bureau of Investigation.  The government further requests that the Clerk of Court be directed to make no public docket entry of the sealed documents and motion and order to seal, and to provide copies of all sealed documents only to Sarah M. Wolfe, Assistant United States

Attorney, until further order of the Court or until notified by the United States Attorney, or his

representative, that the defendant has been arrested and extradited to the United States.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

s/ Sarah M. Wolfe
SARAH M. WOLFE
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 23- |
| | : | DATE FILED: |
| v. | | |
| | : | [UNDER SEAL] |
| ALEKSEY OLEGOVICH VOLKOV, | | |
| a/k/a "chubaka.kor" and "nets" | : | VIOLATIONS: |
| | | 18 U.S.C. §§ 371, 1030(a)(2)(C), |
| | : | 1030(a)(5)(A), 1030(a)(7)(C), |
| | | 1030(c)(2)(B)(i), 1030(c)(4)(B), |
| | : | 1030(c)(3)(A) (Conspiracy to commit |
| | | computer fraud – 1 count) |
| | : | 18 U.S.C. § 1956(h) (Conspiracy to |
| | | commit money laundering – 1 count) |
| | : | Notices of forfeiture |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

### BACKGROUND

At all times material to this Indictment:

1.      The defendant, ALEKSEY OLEGOVICH VOLKOV, and other persons known and unknown to the grand jury (hereinafter collectively referred to as "the Conspirators") were engaged in a computer hacking and extortion scheme that targeted businesses in the United States using malicious software known as "Yanluowang ransomware."  This ransomware variant

is typically identifiable because a victim company's files are encrypted with the extension ".yanluowang."

2.      To effectuate the scheme, the Conspirators first obtained unlawful access into victims' computer networks and stole their data.  Then, the Conspirators deployed the ransomware on the victims' computers and encrypted the data to prevent victims from accessing it, thereby hindering their business operations.  Third, the Conspirators demanded a ransom be paid by the victims in exchange for restoring access to the data and promising not to publicly disclose the hack or release victims' stolen data on a leak website.  Lastly, the Conspirators divided the ransom payments amongst themselves.

3.      The defendant, ALEKSEY OLEGOVICH VOLKOV, was a citizen of Russia who used the online monikers "chubaka.kor" and "nets" among others.  VOLKOV served as an "initial access broker" for the group, meaning he procured access to victim networks and provided it to the group in exchange for a percentage of the ransom proceeds.

### VICTIMS

4.      The Conspirators used Yanluowang ransomware to attack victims in the United States and elsewhere, including the following:

    a.      Victim 1:  a business located in the Eastern District of Pennsylvania;

    b.      Victim 2:  a business located in the Eastern District of Pennsylvania;

    c.      Victim 3:  a business located in the Central District of California;

    d.      Victim 4:  a business located in the Eastern District of Michigan;

    e.      Victim 5:  a business located in the Northern District of Illinois;

    f.      Victim 6:  a business located in the Northern District of Georgia; and

    g.      Victim 7:  a business located in the Southern District of Ohio.

h.    Victim 8:  a business located in the Eastern District of Pennsylvania.

**RELEVANT TERMS**

5.    A "server" was a type of computer or device on a network that managed network resources and/or provided services for other computers connected to it via a network or the internet.  Servers could be located hundreds or thousands of miles from other computers on the network.

6.    "Encryption" was the translation of data into unreadable code.  To access encrypted data, a user needed to have access to a password (known as a "decryption key" or "decryptor") that enabled the user to decrypt it.

7.    "Ransomware" was a type of malicious software (also known as malware) that infected a computer or network and encrypted some or all of the data stored there so that the data could not be accessed by its owner.  Ransomware users typically demanded that the owner of the encrypted computer or network pay a ransom, in cryptocurrency, in return for a decryption key to recover the data.

8.    "Tor" (an abbreviation for "The Onion Router") was a computer network designed to facilitate anonymous communications over the internet.  Typically, user activities on the internet could be attributed to the user via "Internet Protocol" ("IP") addresses assigned by an internet service provider.  The Tor network routed a user's communications through a globally distributed network of relay computers or proxies ("the Tor network"), that typically prevented identification of users by IP address.

9.    "Bitcoin" was a type of cryptocurrency circulated over the internet as a form of value.  Bitcoin were not issued by any government, bank, or company, but they were generated

3

and controlled through computer software operating via a decentralized, peer-to-peer network. To acquire Bitcoin, typically a user would purchase them from a Bitcoin seller or "exchanger."

10.     "DDoS attack" (an abbreviation for "Distributed Denial of Service") was an attack in which a victim's computer server was flooded with internet traffic to prevent legitimate users from accessing connected online services and sites.

## THE CONSPIRACY

11.     From in or around July 2021 through in or around November 2022, in the Eastern District of Pennsylvania, and elsewhere, defendant

### ALEKSEY OLEGOVICH VOLKOV,
### a/k/a/ "chubaka.kor" and "nets"

conspired and agreed with persons known and unknown to the grand jury to commit offenses against the United States, that is:

a.  to intentionally access a protected computer used in interstate and foreign commerce without authorization, and thereby obtain information from a protected computer, and to commit the offense for the purposes of private financial gain, in violation of Title 18 United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(B)(i);

b.  to knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally cause damage without authorization to a protected computer, and cause loss to one or more persons during any 1-year period aggregating at least $5,000.00 in value and cause damage affecting 10 or more protected computers during any 1-year period, in violation of Title 18, United States Code, Sections 1030(a)(5)(A) and 1030(c)(4)(B); and

c.  to knowingly and with intent to extort from any person any money or other thing of value, transmit in interstate and foreign commerce any communication containing any demand

and request for money and other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion, in violation of Title 18, United States Code, Sections 1030(a)(7)(C) and 1030(c)(3)(A).

## OBJECT OF THE CONSPIRACY

12.     The object of the conspiracy was for the Conspirators to enrich themselves by:

    a.      Identifying and exploiting vulnerabilities in victims' computer networks;

    b.      Surreptitiously accessing victims' computers without authorization by exploiting security vulnerabilities;

    c.      Stealing victims' data and exfiltrating the data to servers controlled by the Conspirators;

    d.      Deploying Yanluowang ransomware on victims' computers, resulting in the encryption of data on the computers;

    e.      Extorting victims by demanding a ransom be paid in Bitcoin in exchange for:

        i.   A decryption key for the encrypted data;

        ii.  A promise not to publicize information concerning the breach of victims' networks; and

        iii. A promise not to publicly release victims' stolen data on a Yanluowang leak website; and

    f.      Collecting ransom payments from the victims that agreed to pay the ransom; and

    g.      Dividing the ransom payments amongst the Conspirators.

5

## MANNER AND MEANS

It was part of the conspiracy that:

13.    The Conspirators identified potential victims, and searched for security vulnerabilities in and login credentials for victims' computer networks.

14.    Once security vulnerabilities were identified and exploited, the Conspirators surreptitiously hacked into (*i.e.*, accessed without authorization) the computer networks of victims.

15.    Once inside victims' computer networks, the Conspirators used sophisticated techniques and tools, including, for example, Cobalt Strike software, to conduct reconnaissance, map out the networks, identify additional security vulnerabilities, and expand their access within the networks.

16.    After conducting reconnaissance, the Conspirators acquired, and attempted to acquire, the victims' confidential data, which could be used as leverage to extort victims.  The Conspirators stole and exfiltrated this confidential data to servers controlled by the Conspirators.

17.    After stealing and exfiltrating the victims' data, the Conspirators installed Yanluowang ransomware on as many computers within victims' networks as possible.  Once the ransomware was deployed within victims' networks, the Conspirators then executed the malware and encrypted victims' data stored within the computers and on the network.  Such encryption made the data inaccessible to victims.  In order to avoid detection, the Conspirators often encrypted the data surreptitiously during non-business hours.

18.    The simultaneous, mass encryption of victims' computers and networks was intended to, and sometimes did, cripple the regular business operations of victims.  Without access to their data, some victims were unable to function normally and had to shut down or

drastically curtail their operations.

19.     The Conspirators then extorted victims by leaving an electronic ransom note in the form of a text file on computers encrypted by the ransomware.  The Yanluowang ransom notes stated that the victims' computer systems had been hacked, that their data was encrypted, and that their confidential data had been downloaded.  The ransom notes directed the victims to contact the Conspirators via provided email addresses within 24 hours and warned victims not to contact law enforcement or recovery companies, or try to decrypt the files themselves.  The ransom notes contained threats that, if the victims did not comply with the demands, the Conspirators would call the victims' employees and business partners and conduct DDoS attacks against the victims, thereby blocking others from gaining legitimate access to the victims' computers.  Additionally, the ransom notes provided a Tor "leak site" where the victims' confidential data would be posted if the victims did not comply.

20.     The Conspirators provided different email addresses to each victim for purposes of communication.  Once the victims contacted the Conspirators per the ransom note directions, the Conspirators provided proof of the victims' exfiltrated files and negotiated the ransom price and timeline.  When a deal was made, the Conspirators provided a Bitcoin address where the victim should deposit the agreed upon ransom payment.

21.     In some instances, victims did not contact the Conspirators and victims' confidential data was subsequently posted on the Conspirators' Tor leak site.

**OVERT ACTS**

22.     In furtherance of the conspiracy and to effect its unlawful object, the Conspirators committed and caused to be committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

7

     a.    On or about July 19, 2021, the Conspirators deployed Yanluowang ransomware on the computers of Victim 1, a business located in the Eastern District of Pennsylvania, and encrypted the computers without authorization.

     b.    On or about July 19, 2021, the Conspirators made harassing phone calls to executives of Victim 1.

     c.    On or about July 19, 2021, the Conspirators engaged in a DDoS attack against the computers of Victim 1.

     d.    On or about September 18, 2021, the Conspirators deployed Yanluowang ransomware on the computers of Victim 2, a business located in the Eastern District of Pennsylvania, and encrypted the computers without authorization.

     e.    On or about September 18, 2021, in connection with the ransomware, the Conspirators uploaded a text file containing a ransom note to the computers of Victim 2. The ransom note stated,[1] in part, "Hi, since you are reading this it means you have been hacked. In addition to encrypting all your systems, deleting backups, we also downloaded 2 terabytes of confidential information." The note further stated, "you should contact us within 24 hours by email" and provided two email addresses.

     f.    On or about September 18, 2021, the Conspirators demanded Victim 2 pay a $3 million USD ransom in Bitcoin in exchange for a decryption key and to avoid publication of Victim 2's data.

     g.    On or about September 18, 2021, the Conspirators engaged in a DDoS attack against the computers of Victim 2.

---

[1] All of the emails, ransom notes, and other materials quoted in this Indictment bear the same spelling, punctuation, and grammar as found in the originals of these records. Unless specifically indicated, all conversations and statements described in this Indictment are related in substance and in part.

     h.     On or about October 1, 2021, the Conspirators provided Victim 2 with two links to a file sharing platform where Victim 2 could see samples of the data that the Conspirators had stolen.

     i.     On or about October 1, 2021, following further negotiations, Victim 2 paid a ransom of approximately $500,000 USD in Bitcoin to a BTC addresses provided by the Conspirators in exchange for a decryption key and to avoid publication of Victim 2's data.

     j.     On or about November 20, 2021, defendant ALEKSEY OLEGOVICH VOLKOV provided one of the Conspirators ("CC-1") with information regarding Victim 3, a business located in the Central District of California.

     k.     On or about November 20, 2021, defendant ALEKSEY OLEGOVICH VOLKOV provided CC-1 with information regarding Victim 4, a business located in the Eastern District of Michigan.

     l.     On or about November 27, 2021, the Conspirators deployed Yanluowang ransomware on the computers of Victim 3 and encrypted the computers without authorization.

     m.     On or about November 27, 2021, the Conspirators made harassing phone calls to employees of Victim 3.

     n.     On or about November 27, 2021, the Conspirators engaged in a DDoS attack against the computers of Victim 3.

     o.     On or about December 13, 2021, the Conspirators deployed Yanluowang ransomware on the computers of Victim 4 and encrypted the computers without authorization.

     p.     On or about December 13, 2021, the Conspirators sent Victim 4 an email stating, "[w]e have 1500 gigabytes of your confidential information. Also, your sites, services are now under DDoS attack." The Conspirators demanded that Victim 4 pay a $15 million USD

ransom in Bitcoin in exchange for a decryption key and to avoid publication of Victim 4's data.

q.      On or about December 13, 2021, the Conspirators engaged in a DDoS attack against the computers of Victim 4.

r.      On or about December 13, 2021, the Conspirators provided Victim 4 with two links to a file sharing platform where Victim 4 could see samples of the data that the Conspirators had stolen.

s.      On or about December 14, 2021, the Conspirators provided Victim 4 with another link to a file sharing platform where Victim 4 could see more samples of the data that the Conspirators had stolen.

t.      On or about December 17, 2021, the Conspirators advised Victim 4 that they would resume attacks if the ransom payment was not received by a certain date.

u.      On or about December 31, 2021, following further negotiations, Victim 4 paid a ransom of approximately $1 million USD in Bitcoin to a BTC address provided by the Conspirators to avoid publication of Victim 4's data.

v.      On or about December 31, 2021, CC-1 sent defendant ALEKSEY OLEGOVICH VOLKOV two payments in connection with the attack on Victim 4: approximately 2.26 BTC (then valued at approximately $94,259 USD), which was derived from the proceeds of Victim 2's prior $500,000 USD ransom payment, and approximately 3.44 BTC (then valued at $162,220 USD), which was derived from the proceeds of Victim 4's $1 million USD ransom payment.

w.      On or about January 17, 2022, defendant ALEKSEY OLEGOVICH VOLKOV provided CC-1 with information regarding Victim 5, a business located in the Northern District of Illinois.

10

x.      On or about February 1, 2022, the Conspirators deployed Yanluowang ransomware on the computers of Victim 5 and encrypted the computers without authorization.

y.      On or about February 1, 2022, the Conspirators demanded that Victim 5 pay a $6 million USD ransom in Bitcoin in exchange for a decryption key and to avoid publication of Victim 5's data.

z.      On or about March 4, 2022, the Conspirators deployed Yanluowang ransomware on the computers of Victim 6, a business located in the Northern District of Georgia, and encrypted the computers without authorization. The Conspirators also stole and exfiltrated Victim 6's confidential data to servers controlled by the Conspirators.

aa.     On or about March 4, 2022, the Conspirators made harassing phone calls to employees of Victim 6.

bb.     On or about March 8, 2022, the Conspirators sent Victim 6 an email threatening to upload Victim 6's confidential data to a leak site. The conspirators also provided Victim 6 a links to a file sharing platform where Victim 6 could see samples of the data that the Conspirators had stolen.

cc.     On or about April 19, 2022, the Conspirators gained access to the computers of Victim 7, a business located in the Southern District of Ohio, without authorization. The Conspirators also stole and exfiltrated Victim 7's confidential data to servers controlled by the Conspirators.

dd.     On or about June 30, 2022, the Conspirators posted a message on their Tor leak site, stating that they were posting Victim 7's internal data because Victim 7 did not pay the ransom.

ee.     On or about November 27, 2022, defendant ALEKSEY OLEGOVICH

VOLKOV provided CC-1 with information regarding Victim 8, a business located in the Eastern District of Pennsylvania.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 10 and 13 through 22 of Count One of this Indictment are incorporated by reference and realleged as if set forth fully herein.

2.      From in or about December 2021 through in or about April 2022, in the Eastern District of Pennsylvania and elsewhere, defendant

**ALEKSEY OLEGOVICH VOLKOV,**
**a/k/a/ "chubaka.kor" and "nets"**

conspired and agreed with persons known and unknown to the grand jury to commit offenses against the United States, that is, in violation of Title 18, United States Code, Section 1956, specifically, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is fraud and related activity in connection with computers, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**OBJECT OF THE CONSPIRACY**

3.   The object of the conspiracy was to:

    a.      Conceal the Conspirators' identities by demanding that a ransom be paid in Bitcoin to virtual addresses that provide no information as to the identity or location of the owners of those addresses; and

    b.      Disguise the source, destination, and purpose of the transactions by

13

transferring the ransom receipts through a series of Bitcoin addresses.

All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE NO. 1

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     As a result of the violation of Title 18, United States Code, Section 371 (conspiracy to violate Title 18, United States Code, Section 1030), as set forth in this Indictment, defendant

**ALEKSEY OLEGOVICH VOLKOV,**
**a/k/a/ "chubaka.kor" and "nets"**

shall forfeit to the United States of America:

      (a)     any property that constitutes, or is derived from, proceeds obtained directly or indirectly as a result of such violation, including, but not limited to, the sum of $1.5 million; and

      (b)     any personal property that was used or intended to be used to commit or to facilitate the commission of such violation.

      2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the Court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Sections 982(b) and 1030(i)(2), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 982(a)(2) and 1030(i).

## NOTICE OF FORFEITURE NO. 2

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violation of Title 18, United States Code, Section 1956(h), as set forth in this Indictment, defendant

**ALEKSEY OLEGOVICH VOLKOV,**
**a/k/a/ "chubaka.kor" and "nets"**

shall forfeit to the United States of America any property, real or personal, involved in such violation, and any property traceable to such property, including, but not limited to, the sum of $1.5 million.

2.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   (a)     cannot be located upon the exercise of due diligence;

   (b)     has been transferred or sold to, or deposited with, a third party;

   (c)     has been placed beyond the jurisdiction of the Court;

   (d)     has been substantially diminished in value; or

   (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL:

FOREPERSON

/FOR

**JACQUELINE C. ROMERO**
**United States Attorney**

18

*No.*_ _ _ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

## THE UNITED STATES OF AMERICA

vs.

ALEKSEY OLEGOVICH VOLKOV
**a/k/a "chubaka.kor" and "nets"**

### INDICTMENT

Counts

18 U.S.C. §§ 371, 1030(a)(2)(C), 1030(a)(5)(A), 1030(a)(7)(C), 1030(c)(2)(B)(i), 1030(c)(4)(B), 1030(c)(3)(A) (Conspiracy to commit computer fraud – 1 count); 18 U.S.C. § 1956(h) (Conspiracy to commit money laundering – 1 count); Notices of forfeiture

A true bill

▬▬▬▬▬▬▬▬▬▬

Foreperson

Filed in open court this ___ 22 ___ day,
Of ___ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Bail, $___

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INDICTMENT

DESIGNATION FORM to be used by counsel to indicate the category of the case for the
purpose of assignment to appropriate calendar.

Address of Plaintiff:   615 Chestnut Street, Suite 1250, Philadelphia, PA 19106-4476

Post Office:   Philadelphia                    County:    Philadelphia

City and State of Defendant:    Rome, Italy

County:   N/A              Register number:   N/A

Place of accident, incident, or transaction:              Eastern District of Pennsylvania

Post Office:  EDPA                             County:    EDPA

RELATED CASE, IF ANY:

Criminal cases are deemed related when the answer to the following question is "yes".

> Does this case involve a defendant or defendants alleged to have participated in the same
> action or transaction, or in the same series of acts or transactions, constituting an offense
> or offenses?

> YES/NO: No

Case Number:  N/A                    Judge: N/A

CRIMINAL:   (Criminal Category - FOR USE BY U.S. ATTORNEY ONLY)

1.    ○  Antitrust

2.    ○  Income Tax and other Tax Prosecutions

3.    ○  Commercial Mail Fraud

4.    ○  Controlled Substances

5.    ○  Violations of 18 U.S.C. Chapters 95 and 96 (Sections 1951-55 and 1961-68)
          and Mail Fraud other than commercial

6.    ◉  General Criminal

18 U.S.C. §§ 371, 1030(a)(2)(C), 1030(a)(5)(A), 1030(a)(7)(C), 1030(c)(2)(B)(i), 1030(c)(4)(B),
      1030(c)(3)(A) (Conspiracy to commit computer fraud – 1 count); 18 U.S.C. § 1956(h)
      (Conspiracy to commit money laundering – 1 count); Notices of forfeiture

DATE:   August 22, 2023              /s/ Sarah Wolfe
                                     Sarah Wolfe
                                     Assistant United States Attorney

File No. 2022R00056
U.S. v. Aleksey Olegovich Volkov

## INFORMATION SHEET
*DO NOT REMOVE FROM TOP OF FILE*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | FILE NO. ____2022R00056____ |
| | : | |
| v. | : | CRIMINAL NO. __23cr366__ |
| | : | |
| **ALEKSEY OLEGOVICH VOLKOV** | : | DESCRIPTION OF VIOLATION AS PER |
| **a/k/a "chubaka.kor" and "nets"** | : | INDICTMENT: |
| | : | |
| | : | 18 U.S.C. §§ 371, 1030(a)(2)(C), 1030(a)(5)(A), |
| | : | 1030(a)(7)(C), 1030(c)(2)(B)(i), 1030(c)(4)(B), |
| | : | 1030(c)(3)(A) (Conspiracy to commit computer |
| | : | fraud – 1 count) |
| | : | 18 U.S.C. § 1956(h) (Conspiracy to commit money |
| | : | laundering – 1 count) |
| | : | Notices of forfeiture |

*Defendant's current address*  ____Rome, Italy____

*Place of detention*  ____Rome, Italy____

*Federal or local custody*  ____Italian custody per U.S. federal request____

*Register number*  ____N/A____

*Date of birth/PPD Photo number*  ____████2000____

*Date of commitment on instant federal charges*  ____August 2, 2023____

*Reason(s) for detention*  ____flight risk____

*Interpreter needed*  ☐ *no*  ☐ *unknown*  ☑ *yes - specify language or dialect:*  Russian

*Amount of bail*  ☐ *set*  ☐ *posted*  ☐ *recommended*  ☑ *N/A*

*Name and address of bondsman*  ____N/A____  ____N/A____  ____N/A____

*Name and address of defendant's attorney*  ____TBD____

*Telephone / fax number*

*Assistant U.S. Attorney(s) assigned to case*  ____Sarah Wolfe____

*Case agent's name*     Jeffrey Hunter

*Agency*     Federal Bureau of Investigation

*All notices should be sent to:*     Chief, Criminal Division
United States Attorney's Office
One Independence Mall - Suite 1250
615 Chestnut Street
Philadelphia, PA 19106-4476

*Prior docket information:*

    Docket No. __23-mj-1373__ *Magistrate* _____

    Judge __Straw__     *Date* __7/28/23__

*Related indictments, docket numbers, and defendants:*

**Mandatory Minimum Charged:** *Yes, if at least one count, or No:* ☑ NO ☐ YES

**Statutory Minimum Mandatory Time** *(in years):* __N/A__

*Maximum sentence: {list maximum sentence for each count separately}*

18 U.S.C. §§ 371, 1030(a)(2)(C), 1030(a)(5)(A), 1030(a)(7)(C), 1030(c)(2)(B)(i), 1030(c)(4)(B), 1030(c)(3)(A)
    5 years imprisonment; $250,000 fine; two years' supervised release; $100 special assessment.

18 U.S.C. § 1956(h)
    20 years imprisonment; $250,000 fine; three years' supervised release; $100 special assessment.

**TOTAL:** 25 years imprisonment; $500,00 fine; three years' supervised release; $200 special assessment

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

     v.                  :        CRIMINAL NO. 23-

CERTAIN PERSON(S)          :

### O R D E R

AND NOW, this  23rd  day of   August   , 2023, upon consideration of the Government's Motion to Impound Indictment, and accompanying docket papers, and after balancing the public right of access to court documents with the government's interest in protecting ongoing criminal investigation and protecting against the risk of the defendants fleeing prior to arrest and extradition in this matter, it is hereby

### O R D E R E D

that the within indictment and accompanying docket papers are IMPOUNDED and to be retained in the custody of the Clerk of Court until notified by the United States Attorney that the defendant has been arrested and extradited to the United States and the indictment can be unimpounded, except that the Clerk is authorized to disclose to the attorney for the government the docket number and district court judge assigned to the case, and the attorney for the government is authorized to disclose the indictment to the district court judge assigned to the case. The Clerk of Court is directed to make no public docket entry of the sealed documents and motion and order to seal, and to provide copies of all sealed documents only to Sarah M. Wolfe, Assistant United States Attorney.

IT IS FURTHER ORDERED THAT, upon notice from the United States

Attorney's Office, the Clerk shall remove the docket papers hereby impounded and restore the

same to the public docket.

**BY THE COURT:**

Lynne A. Sitarski
Digitally signed by Lynne A. Sitarski
Date: 2023.08.23 10:45:25 -04'00'

_____

**HONORABLE LYNN A. SITARSKI**
**United States Magistrate Judge**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :

       v                     :        CRIMINAL NO. 23-

CERTAIN PERSON(S)           :

## MOTION TO IMPOUND INDICTMENT

The United States of America, by and through its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Sarah M. Wolfe, Assistant United States Attorney for the District, moves to impound the within documents and in support of its Motion states as follows:

1.      The within indictment, and accompanying docket papers, are documents which, if made public would jeopardize the government's interest in protecting an ongoing criminal investigation and protecting against the risk of the defendant's fleeing prior to arrest and extradition in this matter.

2.      Although the public has a common law right of access to judicial proceedings and papers, matters relating to protecting an ongoing criminal investigation and protecting against the defendant's fleeing prior to arrest and extradition are traditionally conducted ex parte and in camera, with deference to the government's determination that the information should be sealed.

3.      Accordingly, balancing the public's right of access to judicial documents with the government's interest in not jeopardizing ongoing criminal investigation and in protecting against the risk of the defendant's fleeing prior to arrest and extradition in this matter,

the government respectfully requests that the government's Motion be GRANTED.  The

government further requests that the Clerk of Court be directed to make no public docket entry of

the sealed documents and motion and order to seal, and to provide copies of all sealed documents

only to Sarah M. Wolfe, Assistant United States Attorney.  It is further requested that the

indictment shall be unimpounded upon notice of the United States Attorney that the defendant(s)

has been arrested and extradited to the United States.

**Respectfully submitted,**

**JACQUELINE C. ROMERO**
**United States Attorney**



 **/s/ Sarah M. Wolfe** _____
**Sarah M. Wolfe**
**Assistant United States Attorney**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :

             v.             :      CRIMINAL NO.  23-

ALEKSEY OLEGOVICH VOLKOV    :
      "chubaka.kor" and "nets"


ORDER FOR BENCH WARRANT


AND NOW, this __23rd___ day of August, 2023, on motion of Jacqueline C.

Romero, United States Attorney for the Eastern District of Pennsylvania, it is ORDERED that a

bench warrant be issued for the arrest of the defendant in the above-captioned case.


BY THE COURT:


Lynne A. Sitarski
Digitally signed by Lynne A. Sitarski
Date: 2023.08.23 10:46:29 -04'00'

_____
HONORABLE LYNN A SITARSKI
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

        v.          :          CRIMINAL NO.  23-

ALEKSEY OLEGOVICH VOLKOV          :
    "chubaka.kor" and "nets"

MOTION FOR BENCH WARRANT

        AND NOW, this 22nd day of August, 2023, Jacqueline C. Romero, United States

Attorney for the Eastern District of Pennsylvania, and Sarah M. Wolfe, Assistant United States

Attorney move the Court for the allowance of a bench warrant in the above-entitled case directed

to the United States Marshal, Eastern District of Pennsylvania, or any other United States

Marshal or officer authorized to execute same.

        Respectfully submitted,

        JACQUELINE C. ROMERO
        United States Attorney

        */s/ Sarah M. Wolfe*
        Sarah M. Wolfe
        Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        :

             v.        :        CRIMINAL NO.   23-

ALEKSEY OLEGOVICH VOLKOV        :
    "chubaka.kor" and "nets"


<u>ORDER FOR ISSUANCE OF CERTIFIED COPIES OF BENCH WARRANT</u>


    AND NOW, this __23rd___ day of August, 2023, on motion of Jacqueline C.

Romero, United States Attorney for the Eastern District of Pennsylvania, it is ORDERED that

the Clerk's Office shall immediately issue two certified copies of the bench warrant issued for

the arrest of the defendant in the above-captioned case to Assistant United States Attorney Sarah

M. Wolfe.


                    BY THE COURT:


                    Lynne A. Sitarski
                    Digitally signed by Lynne A. Sitarski
                    Date: 2023.08.23 10:47:29 -04'00'

                 _____
                 HONORABLE LYNN A SITARSKI
                 United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

            v.          :          CRIMINAL NO.   23-

ALEKSEY OLEGOVICH VOLKOV          :
    "chubaka.kor" and "nets"


### MOTION FOR CERTIFIED COPIES OF BENCH WARRANT


      AND NOW, this 22nd day of August, 2023, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Sarah M. Wolfe, Assistant United States Attorney move the Court to order the Clerk's Office to immediately issue two certified copies of the bench warrant issued in the above-entitled case to Sarah M. Wolfe.


                    Respectfully submitted,

                    JACQUELINE C. ROMERO
                    United States Attorney


                    */s/ Sarah M. Wolfe*
                    Sarah M. Wolfe
                    Assistant United States Attorney